IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,              )<br>                                                            )<br>           Plaintiff,                              )       8:04CV<br>                                                            )<br>      vs.                                              )       **VERIFIED COMPLAINT**<br>                                                            )       **FOR FORFEITURE**<br>$46,000.00 IN UNITED                        )<br>STATES CURRENCY,                           )<br>                                                            )<br>           Defendant.                          )| |

   COMES NOW the Plaintiff, United States of America, and for its cause of action against the Defendant, states and alleges as follows:

   1. The Court has jurisdiction of this matter pursuant to Title 28, United States Code, Sections 1345, 1355 and 1395, and pursuant to Title 21, United States Code, Section 881.

   2. The Defendant is $46,000.00 in United States currency.

   3. The Defendant property is now and will be during the pendency of this action in the judicial district of the State of Nebraska.

   4. On or about June 24, 2003, the Defendant property was seized by deputies of the Douglas County Sheriff's Office; said seizure took place on land, within the District of Nebraska. Immediately after said seizure, administrative forfeiture proceedings were instituted by the United States Drug Enforcement Administration.

   5. James E. Thompson has filed a Claim for ownership, pertaining to said Defendant property, with the United States Drug Enforcement Administration.

6. On June 24, 2003, Mr. Thompson was in possession of the Defendant property, as proceeds traceable to the exchange of a controlled substance, or alternatively, the Defendant property was used or was intended to be used to facilitate the transportation, sale, receipt, possession, concealment or distribution of a controlled substance, as more particularly described as follows:

a. On Tuesday, June 24, 2003, at approximately 8:21 p.m., Deputy Shea Degan, of the Douglas County Sheriff's Office, was on patrol with a ride along, Drug Enforcement Administration Special Agent Don Sikorsky. While on patrol in a marked unit, Deputy Degan and Special Agent Sikorsky observed a silver 1993 Lincoln Town Car, bearing Michigan license plate no. 2FGP37, drive over the white divided line for approximately two hundred feet. In addition to this traffic infraction, both Deputy Degan and Special Agent Sikorsky observed the Lincoln Town Car follow a vehicle at a close, unsafe distance. Deputy Degan conducted a traffic stop on the vehicle.

b. Upon approaching the driver's side door, Deputy Degan made contact with the driver, James Bartola Eckersen, Jr., and asked him for his driver's license, vehicle registration and insurance Deputy Degan then asked Mr. Eckersen if he would step to the rear of the vehicle. Deputy Degan spoke with Mr. Eckersen and explained he was stopped for driving over the white divided line and for following too closely. Mr. Eckersen told Deputy Degan he thought he was being stopped for speeding. He added that when he drove up and over the crest of the hill near I-80 westbound and 72nd Street, he saw Deputy Degan's cruiser parked along the shoulder and made an attempt to slow down because he was speeding. Mr. Eckersen laughed that he wasn't

2

being stopped for the violation of speeding, but for careless driving and following too closely. Mr. Eckersen agreed with Deputy Degan that he might have been too close to the vehicle in front of him.

c. Mr. Eckersen told Deputy Degan that his lifelong friend, James E. Thompson, who was seated in the passenger seat of his Lincoln, and he were traveling from their hometown, Traverse City, Michigan, en route to Las Vegas, Nevada, to gamble. Mr. Eckersen told Deputy Degan they had planned on possibly staying in Lincoln, Nebraska, overnight to rest before heading to Law Vegas, and would be staying at an unknown hotel in Vegas for approximately three days before heading back home. Mr. Eckersen told Deputy Degan he was unemployed because of a recent layoff as a truck driver. He also said he had just purchased the Lincoln Town Car two or three days prior, just for the trip to Las Vegas.

d. Deputy Degan asked Mr. Eckersen if there were any large amounts of narcotics in his vehicle; Mr. Eckersen stated no. Upon asking Mr. Eckersen if there were any large amounts of U.S. currency in his vehicle, he stated, "Not to my knowledge."

e. Deputy Degan spoke with the front seat passenger, James E. Thompson, He said his lifelong friend, James Eckersen, and he were en route from Traverse City, Michigan, to Lincoln, Nebraska, for a few days to visit Mr. Thompson's niece, Linda, and then would travel westbound, possibly to southern California or maybe even Las Vegas. Mr. Thompson made it clear to Deputy Degan that Mr. Eckersen and he had not made any solid plans as to where they would be traveling, but did state that they

3

would be driving "all over" the western portion of the United States seven to ten days. Mr. Thompson told Deputy Degan Mr. Eckersen was a truck driver and had been given vacation leave from his job.

    f. Deputy Degan asked if Mr. Thompson if he knew of any weapons or large amounts of narcotics or U.S. currency within the vehicle. Upon mentioning the U.S. currency, Deputy Degan observed Mr. Thompson look down and away from Deputy Degan. Deputy Degan even noticed that Mr. Thompson's lower left eyelid twitched when he answered "no". Deputy Degan asked about the U.S. currency once more and Mr. Thompson's lower left eyelid, once again, began to twitch. Mr. Thompson's eyelid had not twitched during any of the other questions until the U.S. currency was mentioned. Mr. Thompson then admitted to Deputy Degan he had approximately two to three thousand dollars inside his duffle bag within the vehicle, and added there was not any more.

    g. Deputy Degan asked Sergeant E. J. Van Buren to record check both Mr. Eckersen and Mr. Thompson through E.P.I.C. (El Paso Intelligence Center) in an effort to make certain neither of the two had any outstanding "wants" or warrants. After doing so, Sgt. Van Buren told Deputy Degan Mr. Eckersen had an active warrant through Kennebec County Sheriff's Office in Maine for an unknown offense, and that it was a nationwide extradition. Deputy Degan immediately placed Mr. Eckersen in handcuffs, read him his <u>Miranda</u> warnings and placed him in Deputy Fitzsimmons' patrol unit for transportation to the Douglas County Sheriff's Office for booking.

      h. Deputy Degan asked the passenger, Mr. Thompson, if Deputy Degan could search his luggage. Mr. Thompson agreed to a consent search. Deputy Degan explained he did not have to give consent if he did not want to. Mr. Thompson once again consented

      i. Sgt. Van Buren told Mr. Thompson and Mr. Eckersen he was going to deploy a drug detection dog for a vehicle sniff. K-9 Mato was deployed and indicated to a presence of narcotic odor by scratching at the driver's door seam. Deputy Degan advised Mr. Thompson of the positive indication and explained to Mr. Thompson that Deputy Degan felt as though there might be a large sum of currency in the vehicle. Deputy Degan asked Mr. Thompson to be honest. Mr. Thompson then said he had a large sum of money in his duffle bag, in the amount of thirty to forty thousand dollars. He stated he was unsure as to the exact amount, because he had just grabbed all of his savings to go gamble.

      j. Young's Towing was contacted and transported the vehicle to the Douglas County Sheriff's Office with the currency still in it. At the Douglas County Sheriff's Office, the vehicle was further searched; nothing was found. Sgt. Van Buren transported the currency to the locker room along for a K-9 sniff. Sgt. Van Buren wore gloves at all times when he handled the currency.

      k. K-9 Mato is certified in the state of Nebraska as a Narcotic Detector Dog. Mato is trained to detect the odors of marijuana, cocaine, heroin and methamphetamine. Mato is an aggressive indication dog and is trained to bite, bark or scratch once he detects the odor of a listed drug. K-9 Mato was deployed in a

locker room without the presence of narcotics. Mato was taken around the lockers three times and did not indicate a presence of narcotic odor. Circulated currency was then place in one locker, and the suspect currency was placed in another locker. Mato was taken by the circulated currency once, and did not indicate to a presence of narcotic odor. Mato was taken past the suspect currency location once, and indicated a presence of narcotic odor by scratching where the suspect currency was hidden.

l. Special Agent Sikorski and Deputy Matt Murphy interviewed Mr. Eckersen and Mr. Thompson. Mr. Eckersen was presented with a disclaimer form and signed the form, stating he did not know who to whom the currency belonged. Mr. Eckersen released his vehicle and personal items to Mr. Thompson. Mr. Thompson was released and given a receipt for the currency. That currency is the Defendant property. Mr. Eckersen was booked and transported to the Douglas County Corrections Center by Deputies Murphy and Fitzsimmons.

7. By reason of the foregoing, the Defendant property was used or was intended to be used to commit or facilitate the commission of violations of Title 21, United States Code, Sections 841 and 844. The Defendant property is therefore subject to forfeiture to the United States pursuant to Title 21, United States Code, Section 881(a)(6), and no other property rights should exist in it.

WHEREFORE, the Plaintiff, United States of America, prays the Defendant property be proceeded against for forfeiture in accordance with the laws and regulations of the rules of this Court; that due notice be given to all interested parties to appear and show cause why forfeiture should not be decreed; that the Defendant property be condemned, as forfeited, to the United States of America and disposed of according to law and regulation; that the costs of this action be assessed

against the Defendant property; and for such other and further relief as this Court may deem just and equitable.

>UNITED STATES OF AMERICA,
>Plaintiff
>
>MICHAEL G. HEAVICAN
>United States Attorney
>
>By: _____
>NANCY A. SVOBODA (#17429)
>Assistant U.S. Attorney
>1620 Dodge Street, Suite 1400
>Omaha, Nebraska 68102-1506
>(402) 661-3700

## VERIFICATION

STATE OF NEBRASKA      )
                       ) ss.
COUNTY OF DOUGLAS      )

Pursuant to Rule C(2), Supplemental Rules of Certain Admiralty and Maritime Claims, Assistant United States Attorney for the District of Nebraska, Nancy A. Svoboda, being first duly sworn, deposes and states that the facts set forth herein are true and correct according to the best of her knowledge and belief.

_____
NANCY A. SVOBODA (#17429)
Assistant U.S. Attorney

Subscribed and sworn to before me this 12th day of April, 2004.

_____
Notary Public

GENERAL NOTARY - State of Nebraska
DEBRA L. WAGMAN
My Comm. Exp. March 30, 2006

Pursuant to the rules of this Court, the United States of America hereby requests the trial of the above and foregoing action be held in Omaha, Nebraska, and that it be calendared accordingly.

_____
NANCY A. SVOBODA
Assistant U.S. Attorney

8